**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| MALIBU MEDIA, LLC, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN DOE subscriber assigned IP address ) <br> 73.201.158.15, ) <br> ) <br>     Defendant. ) <br> ) | Civil Action Case No. <u>1:18-cv-02555-CRC</u> |

**<u>PLAINTIFF'S BRIEF IN RESPONSE TO THE COURT'S
NOVEMBER 27, 2018 MINUTE ORDER</u>**

## I. INTRODUCTION

On November 16, 2018, the Honorable Judge Lamberth denied a plaintiff, Strike 3 Holdings, LLC, the ability to uncover the identity of an anonymous Internet infringer and pursue its prima facie claim of copyright infringement. Judge Lamberth's decision was based mainly on three factors: (1) that Strike 3's technology could not identify the infringer; and (2) that Strike 3's content was "aberrantly salacious"; and (3) that Strike 3 was a "copyright troll."

Plaintiff respectfully suggests that Judge Lamberth's reasoning should not be applied to this Plaintiff, nor this case. First, Plaintiff's technology has been proven to work in every court that has conducted an evidentiary investigation into its accuracy. And, Plaintiff has time and again been able to identify and pursue infringers. Moreover, Plaintiff's content is not salacious or otherwise highly controversial. Regardless, Plaintiff respectfully suggests a court should not use its own personal tastes regarding the nature of content as basis to deny a plaintiff its First Amendment right to pursue a valid copyright claim. Finally, Plaintiff is not a "copyright troll" but instead a company legitimately trying to protect its content from widespread infringement.

## II. ARGUMENT

### A. Plaintiff's Infringement Tracking and Identification Technology Works

Plaintiff utilizes IPP International U.G. as its investigator to track and determine infringement. This technology has been held valid by numerous courts, including after trial,[1] evidentiary hearing,[2] and where a court entered terminating default sanctions against a defendant

---

[1] "Malibu had expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants — both of whom were located in Germany and who testified at the trial of June 10, 2013 — was valid." *Malibu Media, LLC v. Does*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013).

[2] After an evidentiary hearing, the Eastern District of New York found Malibu's investigators "offered credible testimony regarding the methods that [it] used on behalf of Malibu Media in identifying the Doe Defendant's IP address as an infringer of its copyrighted material. Accordingly, Plaintiff's allegations and evidence submitted in support thereof are sufficient at this juncture to establish a prima facie claim for copyright infringement against Defendant." *Malibu Media, LLC v. Doe*, No. 15-CV-3504 (JFB)(SIL), 2016 U.S. Dist. LEXIS 112187, at *22 (E.D.N.Y. Aug. 23, 2016).

who spoliated evidence.[3]

Judge Lamberth suggests that: (a) "virtual private network and onion routing spoof IP addresses (for good and ill); (b) routers and other devices are unsecured; (b) malware cracks passwords and opens backdoors; (c) multiple people (family, roommates, guests, neighbors, etc.) share the same IP address; (d) a geolocation service might randomly assign addresses to some general location if it cannot more specifically identify another." *Strike 3 Holdings, LLC v. John Doe,* 2018 U.S. Dist. LEXIS 195580, at *1-2 (D.D.C. Nov. 16, 2018) ("Strike 3 Opinion").

First, a virtual private network ("VPN"), shields Defendant's IP address through the VPN company and network.[4]  Put another way, it would not identify Defendant's IP address as owned by Comcast Communications, LLC, like here.  Likewise, it is nearly impossible to transmit a movie file through an onion routing spoofing software, and certainly not seven movies like Plaintiff alleges that Defendant downloaded.[5]  *See* CM/ECF 1-2.  The likelihood that Defendant was hacked, and an unknown interloper accessed his Internet through a malware crack over the course of June 2018 to October 2018 is theoretically possible, but certainly not plausible.[6]  Likewise, the length of infringement complained of in this action, plus infringement of multiple movies suggests that this is not a guest or neighbor.  To the extent the infringer is a roommate or family member,

---

[3] *See Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 U.S. Dist. LEXIS 64281, at *40-41 (S.D. Ind. May 18, 2015) (finding "Plaintiff bolstered the strength of its infringement claim through testimony from [its investigator].")

[4] Strong VPN, Pure VPN, and Express VPN are all notable VPN services and each company publicly admits that their VPN hides, masks, and replaces the user's true IP address.  *See* https://strongvpn.com/what-is-vpn/ (Last Accessed on December 4, 2018)("Conceal your location, personal identity, and more by masking your IP address with an IP address from StrongVPN."); https://www.purevpn.com/cnet-special.php?utm_medium=referral&utm_source=aff-18874-leadgen-cbslnk.cnet.com (Last Accessed on December 4, 2018) ("Browse anonymously by hiding your IP address and avoid ISP or third party monitoring."); https://www.expressvpn.com/cnet (Last Accessed on December 4, 2018) ("Stream or download anything, from any of our servers, anywhere on Earth, with your IP address hidden from prying eyes.")

[5] https://blog.torproject.org/bittorrent-over-tor-isnt-good-idea (Last Accessed on December 4, 2018)

[6] *See* Declaration of Patrick Page, ¶ 24 (Mr. Paige, a well-respected computer forensics expert with over 20 years' experience in his field noted that in his experience tracking IP addresses distributing child pornography on peer-to-peer networks, he "never came across a Wi-Fi hacker situation.")

the subpoena likely will identify the guilty party.[7] Finally, geolocation services are used to establish jurisdiction prior to the ISP identifying the subscriber, and it is unclear how that could possibly have any impact once the Defendant has been identified.[8]

### B. Plaintiff's Content Is Not So Offensive to be Denied Its Right to Petition the Court to Seek Redress for Copyright Infringement

The second reason Judge Lamberth denied Strike 3's motion is because of the "content's aberrantly salacious nature." Strike 3 Opinion, *3. Malibu Media only operates one website, X-Art.com, which features artistic adult content well within the mainstream of the adult industry.[9] The potential stigmas alluded to by Judge Lamberth in his Strike 3 Opinion regarding the *Blacked* websites are not present here.[10] Indeed, according to GQ Magazine, Malibu Media,

---

[7] "Whether the individuals whose identities are sought by the subpoena are liable remains to be litigated and does not provide grounds upon which to quash the subpoena. The identi[t]y of individuals who may have violated the copyright is essential to resolving the copyright holder's claim." *Third Degree Films, Inc. v. Does 1-2010, 2011 U.S. Dist. LEXIS 116205* (N.D. Ind. October 6, 2011). Other courts agree, noting that "any concern about identifying a potentially innocent ISP customer, who happens to fall within the Plaintiff's discovery requests upon the ISPs, is minimal and not an issue that would warrant the Court to exercise its inherent power to govern these discovery matters by minimizing or prohibiting the otherwise legitimate, relevant, and probative discovery." *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-669-T-23AEP, 2012 U.S. Dist. LEXIS 188890, *8-9 (M.D. Fla. July 6, 2012); *See also Malibu Media, LLC v. Does 1-11*, No. CV 12-7726 (KM), 2013 U.S. Dist. LEXIS 52029, at *22-23 (D.N.J. Apr. 11, 2013) (finding "even if the information itself is not admissible evidence because the subscriber is not the alleged infringer, the information might lead to the discovery of other admissible evidence pertaining to the identity of the alleged infringer"); *Malibu Media, LLC v. Doe*, No. CV H-17-0485, 2017 U.S. Dist. LEXIS 124920, at *3 (S.D. Tex. Aug. 8, 2017) (citations omitted) ("[A]lthough the disclosure of subscriber information may not reveal the actual infringers in these cases, it may nevertheless allow Plaintiff to identify the actual infringers.")
[8] *Malibu Media, LLC v. Doe*, 308 F. Supp. 3d 235, 238 (D.D.C. 2018) (internal quotations omitted) ("The D.C. Circuit has suggested that reliance on 'geolocation services' of this sort is sufficient to justify a 'good faith belief' that a district court has personal jurisdiction over unknown defendants."); *Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 40 (D.D.C. 2011) ("Plaintiff can establish such a good faith basis for residence or personal jurisdiction by utilizing geolocation services that are generally available to the public to derive the approximate location of the IP addresses identified for each putative defendant.")
[9] See Declaration of Colette Pelissier In Support of Plaintiff's Motion for Leave to Serve a Third Party Subpoena Prior to A Rule 26(f) Conference, CM/ECF 2-2.
[10] Regardless, even in Strike 3's case, there is no quasi-obscene or "aberrantly salacious" bar to free speech. *Cf. Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 792, 131 S. Ct. 2729, 2734, 180 L. Ed. 2d 708 (2011) (holding "without persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, [the government] may not revise the judgment of the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs.") (citations and internal punctuations omitted). This is particularly salient because "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244, 122 S. Ct. 1389, 1399, 152 L. Ed. 2d 403 (2002). "It is also well established that speech

LLC d/b/a X-Art.com produces "perhaps the world's most sophisticated cinema erotica."[11] Moreover, "today's conventional wisdom 'is that copyright law no longer concerns itself with the underlying morality or legality of works when determining their eligibility for copyright." *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 198 (N.D. Ill. 2013). Nova Southeastern University Copyright Officer, Stephen Carlisle, J.D., published an analysis of the Strike 3 Opinion finding that the Strike 3 opinion "conflate[s] the terms 'pornography' with 'obscenity,'" and that "[t]he manifest weight of the existing case law says the contrary…the copyright laws do protect pornography." Stephen Carlisle, *Is Pornography Not Protected by Copyright?,* Nova Southeastern University's Website (December 7 2018), http://copyright.nova.edu/pornography (Last Accessed on December 10, 2018), a copy of which is annexed hereto as Exhibit "A." Plaintiff agrees with Mr. Carlisle, J.D., that the Strike 3 Opinion's holding that "a normal BitTorrent Plaintiff would be entitled to the requested 3rd party subpoena but one who trafficked in pornography was not, is a rather curious interpretation of the constitutional guarantee of equal protection under the law." *Id.* Plaintiff respectfully submits that certain anonymity/sealing orders, like those in place Plaintiff's cases in the District of Maryland, provide a reasonable avenue to both protect intellectual property, and allay concerns about public identification of Defendants. *See, e.g.* Exhibit "B, hereto.

### C. Plaintiff is Not a "Copyright Troll"

"Malibu [Media] is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll'—i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers…." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780 (E.D. Pa. 2013). This is because "Malibu is an actual producer

---

may not be prohibited because it concerns subjects offending our sensibilities." *Id.* As "original works of authorship," 17 U.S.C.§ 102, they are also afforded copyright protection against infringement. *See id.* at § 501.

[11] Adam Baidawi, *The Erotic Revolution*, GQ (Mar. 13, 2013), http://www.gq-magazine.co.uk/article/brigham-colette-field-x-art-sex-scene (Last Accessed on December 10, 2018).

of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* 780-81.[12]

Plaintiff is not unlike any other rightsholder trying to stop and recoup from infringement of its copyrights.[13] Because the infringement Plaintiff faces over the BitTorrent network is so substantial and persistent, Plaintiff must file many suits to have an impact. However, "[w]hen presented with evidence to the contrary, Plaintiff, like all litigants may decide to dismiss the action or proceed with discovery." *Malibu Media, LLC v. Maness*, No. 12-CV-01873-RBJ-MEH, 2012 U.S. Dist. LEXIS 187511, at *17 (D. Colo. Dec. 4, 2012).[14] Without the ability to file a lawsuit and unmask the identity of the infringers, copyright owners would have a right without a remedy. Any such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he received an injury." *Marbury v. Madison*, 5 U.S. 137, 163 (U.S. 1803). Chief Justice Marshall continued "[t]he government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Id*.

---

[12] *See also Malibu Media, LLC v. Thal*, No. 15 C 11808, 2016 U.S. Dist. LEXIS 173367, at *11 (N.D. Ill. Dec. 15, 2016) (finding unpersuasive defendant's claim that Plaintiff was a "troll" because defendant failed to impress "what is unfair about Malibu Media's litigation conduct in this case"); Shyamkrishna Balganesh & Jonah B. Gelbach, *Debunking the Myth of the Copyright Troll Apocalypse*, 101 Iowa L. Rev. Online 43, 44 (2016) ("Malibu Media, LLC . . . sues few defendants at a time, and which hardly seems to meet any plausible definition of a copyright troll.")

[13] *See* Balganesh, *supra* at 44. (noting other litigation does not appear to invite similar ire).

[14] Even so, Plaintiff stands by the merits of its claims, and has followed through with many of them to summary judgment, *see e.g.*, *Malibu Media, LLC v. Bui*, No. 1:13-CV-162, 2014 U.S. Dist. LEXIS 191818 (W.D. Mich. July 21, 2014), trial, *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d, and up to the Circuit Courts of Appeals as necessary. *See e.g.*, *Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879 (11th Cir. 2015); *Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 404 (6th Cir. 2017).

Dated:  December 11, 2018

                                    Respectfully Submitted,

                                    By:  /s/ *Jon A. Hoppe*
Jon A. Hoppe, Esquire #438866
*Counsel*
Law Offices of Jon A. Hoppe,
Esquire, LLC
1025 Connecticut Avenue, NW
Ste. 1000
Washington, DC 20036
(202) 587-2994
Fax: (202) 587-2995
Email: jhoppe@mhhhlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                                    By: /s/ *Jon A. Hoppe*

                                          Jon A. Hoppe